NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Orlando CARDONA-ROSARIO, | |
| Petitioner, | Civil No. 10-1064 (AET) |
| v. | **OPINION** |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

THOMPSON, U.S.D.J.

### I. INTRODUCTION

This matter comes before the Court upon Petitioner Orlando Cardona-Rosario's 28 U.S.C. § 2255 Motion to Vacate Sentence [docket # 1] based on ineffective assistance of counsel. On June 22, 2011, the Court held an evidentiary hearing [24] during which the Court heard testimony from Petitioner through the aid of an interpreter, as well as Petitioner's former trial counsel, Gerald Ingram, Esq. Petitioner and Respondent have submitted briefs with proposed findings of fact and conclusions of law. [25, 26, 27]. In light of the testimony taken at the hearing and the parties' written submissions, we adopt the findings of fact and conclusions of law stated below. Because the Court finds that Petitioner did not receive ineffective assistance of counsel, Petitioner's motion to vacate his sentence is denied.

### II. FINDINGS OF FACT

1. Petitioner was previously convicted in the District of Puerto Rico of possession with intent to distribute 124 grams of heroin. (Evidentiary Hr'g Tr. 34–37.)

2. Petitioner's prior conviction came about as a result of a plea agreement with the government dated October 13, 1993. (*See* Resp't's Ex. 2, Plea Agreement.)

   a. In the course of executing the plea agreement, Petitioner's attorney at the time, Maria Sandoval, advised Petitioner that the possession with intent to distribute charge subjected him to a five-year mandatory minimum sentence. (Evidentiary Hr'g Tr. 36.)

   b. In the course of executing the plea agreement, Sandoval advised Petitioner that he was giving up his right to trial, his right to confront and cross-examine witnesses, and his right to call witnesses on his own behalf. (*Id.* at 36.)

   c. Petitioner understood that he was pleading guilty because he was, in fact, guilty. (*Id.* at 36.)

3. Based on this prior conviction, Petitioner served a five-year sentence in a federal prison. (*Id.* at 37.)

4. Petitioner was arrested in New Jersey regarding the present offense by way of a criminal complaint on August 13, 2004. (*Id.* at 37.)

5. In the criminal complaint, Petitioner was charged with conspiracy to distribute 65 kilograms of cocaine. (*Id.* at 46.)

6. At his initial appearance before a federal magistrate judge, Petitioner was advised of his right to an attorney and his right to remain silent, as well as the charges against him and the penalties he faced. (*Id.* at 55–56.)

7. At his arraignment before Judge Lifland, Petitioner entered a not-guilty plea and did not ask to enter a guilty plea. (*Id.* at 57.)

8. Petitioner's friends referred him to a Miami attorney named Jaime Reyes. (*Id.* at 50.)

9. Reyes arranged for Philadelphia attorney Gerald Ingram, Esq., to represent Petitioner. (*Id.* at 17–18, 49.)

10. Of the $25,000 fee Ingram received for representing Petitioner, $20,000 was paid by a third-party and the other $5,000 was paid by Petitioner's family. (*Id.* at 84, 132.)

11. The fee charged by Ingram was to be the same regardless of whether Petitioner entered a guilty plea or proceeded to trial. (*Id.* at 157.)

12. Ingram speaks English and little or no Spanish. (*Id.* at 15.)

13. Petitioner speaks Spanish and very little English. (*Id.* at 85–87, 129.)

14. The first time Ingram visited Petitioner while he was incarcerated, Ingram was aided by the interpreting skills of Giovanni Campbell, Esq., a native Spanish speaker who was also the attorney for one of Petitioner's co-defendants. (*Id.* at 66, 85, 94.)

15. During another visit, Ingram reviewed discovery materials with Petitioner with the assistance of Rosa Pujols, an interpreter employed by the Court of Common Pleas in Philadelphia County. (*Id.* at 66–67, 90, 95.)

16. Ingram used an interpreter every other time he met with Petitioner prior to trial. (*Id.* at 54.)

17. In November 2004, Ingram sent discovery materials to Petitioner with a cover letter stating, as translated from Spanish: "The case against you is not too bad, as I do not think [the government] has so much evidence against you." (Resp't's Ex. 4.)

   a. Ingram based this statement in part on the errors that he had identified in the government's investigation, such as the fact that a case agent's grand jury testimony incorrectly identified Petitioner's co-defendant, Carlos Otero-Quinones, as the one who entered the house in Philadelphia to inspect the

    drugs when it was in fact Petitioner who had done so. (Evidentiary Hr'g Tr. 91–93.) At trial, Ingram extensively cross-examined the case agent on this discrepancy. (*Id.* at 93.)

18. The discovery materials included arrest photographs of Petitioner's co-defendants. (*Id.* at 66.)

19. Ingram informed Petitioner that his co-defendants had pled guilty. (*Id.* at 53, 114–15.)

20. Assistant U.S. Attorney ("AUSA") Stacey Levine sent Ingram a plea offer on April 28, 2005, (Pet'r's Ex. 1), containing the following terms:
    a. a mandatory minimum imprisonment of ten years, maximum fine of $4 million or twice gross profits, and sentence at the discretion of the court;
    b. a 3-level downward adjustment for acceptance of responsibility;
    c. an agreement not to seek any other upward or downward adjustment other than role-in-offense and safety-valve; and
    d. an agreement upon a guidelines offense level of 33.

21. Ingram sent a copy of the plea offer to Petitioner. (Evidentiary Hr'g Tr. 129.)

22. On June 22, 2005, Ingram sent a letter to the government stating, "My Client desires a trial. That has always been his position. We've always been waiting for a trial date." (Resp't's Ex. 1).

23. Ingram chose to go to trial because Petitioner told him that he wanted to go to trial. (*Id.* at 115, 133–34, 116, 148.)
    a. According to Ingram, Petitioner "let [him] know that it was always going to be a trial. It was never a plea, always – it was going to be a trial because he

had a prior conviction and did not want to go to jail." (*Id.* at 89, 147, 152.)

24. At a June 30, 2005, status conference, the government stated on the record that a written plea offer had been sent to Ingram in April 2005 and that the government would need to be informed of Petitioner's acceptance soon. (Evidentiary Hr'g Tr. 107–08.)

   a. The minutes from the status conference reflect that an interpreter was present during the status conference. (*See* Resp't's Post Hearing Br. Ex. A, Minutes of Proceedings.)

   b. During the status conference, Ingram conferred with Petitioner with the assistance of an interpreter regarding the government's plea offer. (Evidentiary Hr'g Tr. 104–105.)

25. AUSA Levine sent Ingram a letter dated July 7, 2005, stating that the government would need a response no later than July 8, 2005. (Pet'r's Ex. 2.)

26. Ingram responded to AUSA Levine with a letter dated July 11, 2005, stating "Mr. Rosario is going to trial. I did not contact you last Friday because I had not spoken to my client." (Pet'r's Ex. 3.)

27. Ingram informed Petitioner of the plea offer. (*Id.* at 106.)

28. Petitioner told Ingram that he was not interested in pleading guilty. (*Id.* at 110.)

29. On July 21, 2005, AUSA Levine filed on behalf of the government a motion in limine seeking to admit, under Fed. R. Evid. 404(b), exhibits concerning Petitioner's 1993 drug conviction from the District of Puerto Rico. (*United States v. Fredricks-Vega, et al.*, 04-cr-0595, docket # 69, Supplemental Motion in Limine (Amended).)

   a. On July 22, 2005, Ingram filed on Petitioner's behalf an opposition to the

      government's motion in limine on the grounds that Petitioner's prior conviction would only show "propensity to commit the crime" and would be would be "unreasonably prejudicial[.]" (*United States v. Fredricks-Vega, et al.*, 04-cr-0595, docket # 70, Def.'s Objection to Gov't's 404(b) Mot.)

    b. In an Order dated July 22, 2005, Judge Lifland granted the government's pretrial motion in limine to admit evidence concerning Petitioner's 1993 drug conviction from the District of Puerto Rico. (*See* Resp't's Ex. 12.)

30. AUSA Levine faxed Ingram a letter on July 25, 2005, stating that Petitioner's guideline range would be a level 40 and that he could receive a 30-year prison sentence. (*See* Resp't's Ex. 3.)

31. Ingram discussed the July 25 letter with Petitioner. (Evidentiary Hr'g Tr. 97.)

32. Petitioner knew that he faced a ten-year mandatory minimum sentence. (*Id.* at 68.)

33. Petitioner knew that 65 kilograms of cocaine was a "much, much larger amount" than 100 grams of heroin. (*Id.* at 48.)

34. Petitioner knew that his 1993 conviction would factor into his sentence on the 2004 offense. (*Id.* at 48.)

35. Petitioner knew that Ingram had successfully defended difficult cases in federal court and obtained not-guilty verdicts. (*Id.* at 98.)

36. When Ingram visited Petitioner on July 24, 2005, Ingram told Petitioner that one of his co-defendants, Eric Fuentes, would likely testify against him at trial. (*Id.* at 99–100.)

37. Ingram told Petitioner that the evidence at trial would corroborate Fuentes's testimony. (*Id.* at 67, 96.)

38. Ingram also stated during the July 24, 2005, visit that the government had filed a motion in limine to admit evidence that Petitioner had threatened Fuentes. (*Id.* at 122.)

39. Petitioner told Ingram that he had spoken with Fuentes in jail and that Fuentes had stated he would not testify against Petitoner. (*Id.* at 102.)

40. The trial of the case against Petitioner began on August 3, 2005.

41. At trial, Fuentes testified that Petitioner had threatened him in order to prevent him from testifying against Petitioner. (*United States v. Fredricks-Vega, et al.*, 04-cr-0595, docket # 105, 08/04/05 Trial Tr. 105–07.)

42. Judge Lifland instructed the jury that "once a conspiracy is established, the guilt of a defendant can be established by evidence tending to show beyond a reasonable doubt that he had at least a slight connection to it and participation in it." (*United States v. Fredricks-Vega, et al.*, 04-cr-0595, docket # 83, Jury Instructions as to Orlando Cardona-Rosario.)

43. A jury found Petitioner guilty of conspiracy to distribute 65 kilograms of cocaine. (*United States v. Fredricks-Vega, et al.*, 04-cr-0595, docket # 85, Verdict Sheet.)

44. At Petitioner's sentencing hearing, Judge Lifland credited Fuentes's testimony as supporting a finding of obstruction of justice. (*United States v. Fredricks-Vega, et al.*, 04-cr-0595, docket # 105, 01/20/06 Sentencing Tr. 29.)

45. Judge Lifland sentenced Petitioner to a prison term of 324 months. (*Id.*)

46. Petitioner argued in his direct appeal before the Third Circuit that Judge Lifland erred in admitting the 404(b) evidence and in his jury instruction. (*See United States v. Fredricks-Vega, et al.*, 04-cr-0595, docket # 120-1, Mandate of USCA as to Orlando

Cardona-Rosario.)

47. The Third Circuit found that Judge Lifland had not committed error, and therefore affirmed the judgment. (*Id.*)

### III. CONCLUSIONS OF LAW

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has interpreted the Sixth Amendment as providing a right not just to counsel, but to "'reasonably effective assistance' of counsel.'" *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The right to effective assistance of counsel applies to an individual pleading guilty, just as it would apply to an individual electing to stand trial[,]" given that a guilty plea "is a fundamental decision in a criminal case." *Id.* (citing *Von Moltke v. Gillies,* 332 U.S. 708, 721 (1948) and *Jones v. Barnes,* 463 U.S. 745, 751 (1983)). Accordingly, "a defendant has the right to make a reasonably informed decision whether to accept a plea offer." *Id.* (citing *Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985)).

The Supreme Court has established a two-prong test for ineffective assistance of counsel claims. *See Strickland*, 466 U.S. at 668. First, a petitioner must demonstrate that counsel's performance fell below an "objective standard" of reasonable professional service, as measured by "prevailing professional norms." *Id.* at 670, 688. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, the petitioner must show a "reasonable probability that, absent counsel's deficient performance, the result of the proceeding would have been different." *Id.*

For a petitioner to demonstrate that he was prejudiced in the plea bargaining context, he must prove that a plea offer was extended, and that a reasonable probability exists that he would have accepted the offer and the court would have approved the agreement. *Enright v. United States*, 347 F. Supp. 2d 159, 165 (D.N.J. 2004) (citing *Day*, 969 F.2d at 44–45).

Petitioner asserts that he received ineffective assistance of counsel in three ways: (1) Ingram's failure to adequately object before and at trial to 404(b) evidence concerning his 1993 conviction; (2) Ingram's failure to object to Judge Lifland's jury instruction allowing a conspiracy conviction upon evidence "tending to show" at least a "slight connection" to the conspiracy and "participation in it;" and (3) Ingram's failure to adequately inform Petitioner of the government's plea offer. (Mot. (28 U.S.C. § 2255) to Vacate Sentence 2–6.) Petitioner's claims regarding the 404(b) evidence and the jury instruction need not be addressed at length, as Ingram's conduct as to both issues was clearly within the range of reasonable professional assistance. Moreover, it is unlikely that Ingram's objection to either issue would have produced a different result—as reflected by the Third Circuit's decision affirming Judge Lifland's rulings.

Petitioner's claim regarding the government's plea offer—the primary issue addressed at the June 22, 2011, evidentiary hearing—similarly fails to satisfy either *Strickland* prong. Regarding the first prong, we credit the sworn testimony of Petitioner's counsel, Gerald Ingram, Esq., that he communicated the plea offer to Petitioner. (Evidentiary Hr'g Tr. 106); (*see also* Ingram Aff. ¶ 3.c). Ingram's testimony is corroborated by several other facts. First, Petitioner had previously pled guilty with regard to his 1993 conviction and therefore knew that our criminal justice system allows an accused to plead guilty as an alternative to trial. Second, Petitioner knew prior to trial of the 2004 offense that all of his co-defendants had pled guilty, so he likely knew that pleading guilty was an option in this case. Third, Petitioner must have heard

about the plea offer because AUSA Levine discussed the plea at the June 30, 2005, status conference, at which Petitioner was present and assisted by an interpreter. Finally, Ingram's fee was to remain fixed at $25,000 regardless of whether Petitioner chose to plead guilty or proceed to trial, so Ingram had no incentive not to advise Petitioner of the plea offer. Taken together, these facts call into question Petitioner's assertion that he was not advised of the plea agreement.

With respect to the second prong, we conclude that even if Ingram insufficiently explained the plea agreement, there was no prejudice because it is unlikely that Petitioner would have pled guilty. Petitioner knew that the amount of drugs involved was much greater than that involved in his 1993 conviction, and he likely knew that he would face a substantial sentence if he were to plead guilty. Moreover, Petitioner's threats to prevent Fuentes from testifying are inconsistent with the conduct of someone who intends to plead guilty.

Thus, Ingram did not provide ineffective assistance of counsel and Petitioner's Sixth Amendment claim fails. Accordingly, Petitioner is not entitled to accept the government's plea offer after having chosen to go to trial, nor is Petitioner entitled to have his sentence vacated. An appropriate order will follow.

                                             /s/ Anne E. Thompson
                                             ANNE E. THOMPSON, U.S.D.J.

Dated     September 22, 2011